UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 22-18-DLB

CHERYL TACKETT, et al.                                                                              PLAINTIFFS

v.                               **MEMORANDUM OPINION & ORDER**

EQUITRANS, LIMITED, et al.                                                                        DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

I.  **INTRODUCTION**

This matter is before the Court on its own motion based on the Court's inherent power and duty to ensure the requirements for subject matter jurisdiction are satisfied in all cases. Plaintiffs Cheryl Tackett, Lara Adkins, and Amanda Jones initially filed suit in Floyd Circuit Court against Defendants Equitrans, Limited; Spectra Energy Operating Company, LLC; Spectra Energy Partners, LP; Big Sandy Pipeline, LLC; Enbridge Inc.; EQT Gathering, LLC; and Equitable Gathering Company, LLC. (Doc. # 1-1 at 6). Defendants Equitrans, EQT Gathering, and Equitable Gathering, ("Defendants"), then removed the action to this Court, while alleging that the other Defendants would file their consent to removal. (Doc. # 1). On March 22, 2022, the Court entered an Order requiring the parties to submit briefing as to why this Court has jurisdiction over the matter. (Doc. # 8). Since entry of that Order, Plaintiffs have filed a Motion to Remand, (Doc. # 20), and Defendants Spectra Energy Partners and Enbridge Inc. have filed Motions to Dismiss.[1]

---

[1] While Plaintiffs titled their filing as a motion to remand, it responds to the Court's jurisdictional order (Doc. # 8) as a brief arguing in response to Defendants' Memorandum in Support of Removal Jurisdiction (Doc. # 19).

1

(Docs. # 15 and 16).  Because Defendants have failed to meet their burden to prove that removal was proper and the Court thus lacks jurisdiction, this matter will be remanded to Floyd Circuit Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This dispute revolves around Defendants' operation of a natural gas pipeline that allegedly runs through Plaintiffs' property.  (*Id.* at 8-9).  Plaintiffs' Complaint is short and to the point; they allege that Defendants "have negligently and/or grossly negligently caused damage to the Plaintiffs' property by virtue of their construction, maintenance, operation and repair of the pipeline in near proximity to the Plaintiffs' property."  (*Id.* at 9).  As a result, Plaintiffs allege they have endured damage to their property, a diminution in the market value of their property, and a loss of use and enjoyment of their property.  (*Id.*).  Plaintiffs seek both compensatory and punitive damages.  (*Id.* at 9-10).

Defendants removed the action to this Court based upon 28 U.S.C. § 1441(a), arguing that federal question jurisdiction exists under the limited yet recognized substantial-federal question doctrine.  (Doc. # 1 ¶¶ 9-24).

## III. ANALYSIS

### A. Federal Question Jurisdiction

As an initial matter, Defendants—because they are the removing parties—bear "the burden of demonstrating federal jurisdiction, and *all doubts should be resolved against removal*."  Harnden v. Jayco, Inc., 496 F.3d 579, 581 (6th Cir. 2007) (emphasis added) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006)).  If removal was improper, the action should be remanded back to the originating state court; the order is not appealable.  See *Dunch v. Nat'l Union Fire Ins. Co. of Pa.,* 43 F. App'x.

2

918, 920 (6th Cir.2002) (28 U.S.C. "[s]ection 1447(d) 'prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ.'") (quoting *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 343 (1976)).

A defendant may remove a civil action brought in state court to a federal court embracing the place where such action is pending only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. Federal courts have original jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States," commonly referred to as federal-question jurisdiction. 28 U.S.C. § 1331.

Typically, federal-question jurisdiction is invoked by a plaintiff who pleads a cause of action that is created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This may include a right of action expressly created by statute, such as 28 U.S.C. § 1983, or a right of action that is implied from a statute, such as the right of private victims of discrimination to sue for violations of Title IX. *Id.*; *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). However, "[t]here is . . . another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," that has been recognized for over a century; that is "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. The Court has noted that "[i]n outlining the contours of this slim category [of cases], we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). However, the Supreme Court has strayed from the belief that the mere need to apply federal law in

a state-law claim will open the "arising under" door.  *Grable*, 545 U.S. at 313.

### 1. *Arising Under*

Then, what does open the "arising under" door?  That is not a simple question.  The Supreme Court has explained that "federal jurisdiction demands *not only a contested federal issue, but a substantial one*, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  *Grable*, 545 U.S. at 313 (emphasis added).  This is not foolproof however as "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is still subject to possible veto."  *Id.*  Federal jurisdiction must still be consistent with "congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  *Id*. at 313-14.  Arising-under jurisdiction has the potential to upset "the state-federal line drawn (or at least assumed) by Congress," so much so that even "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive."  *Id.* at 314 (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)).

In short, there is no magic word to access the federal courthouse, as the Court has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law."  *Id.*  The Sixth Circuit has elucidated a three-part test, known as the "substantial-federal-question doctrine," to determine whether federal question jurisdiction exists over a state-law claim: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities."  *Mikulski v. Centerior*

4

*Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (en banc). Yet the mere presence of a federal issue alone in a state-law claim is insufficient to confer federal question jurisdiction. *Id.* at 565.

Lastly, but importantly, this Court is "mindful that state courts are generally presumed competent to interpret and apply federal law." *Id.* at 560.

### a. Necessarily Raised and Disputed

Defendants contend that a federal issue is necessarily raised by Plaintiffs because the Federal Energy Regulatory Commission's ("FERC") orders under the Natural Gas Act ("NGA") supply the standard under which Defendants' conduct must be measured; otherwise, FERC's exclusive control over pipeline construction and operation would be supplanted. (Doc. # 19 at 10). Defendants contend the issue is disputed because the parties dispute whether the duty of care arises from FERC's orders or from state law. (*Id.* at 11). In short, Defendants claim that federal law supplies the duty of care in this negligence action. The Court disagrees.

As an initial matter, courts consider what body of law creates the cause of action. *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 587 (6th Cir. 2013); *Waldock v. Rover Pipeline LLC*, No. 3:17-CV-959, 2017 WL 3224573, at *4 (N.D. Ohio July 31, 2017). Plaintiffs do not allege a violation of federal law or regulations in their Complaint, nor do they challenge any interpretation. (Doc. # 1-1 at 7-10). Furthermore, the Sixth Circuit in *Columbia Gas* held that because the NGA does not create a general private right of action and the plaintiff did not even allege a violation of the NGA, it could not be the source of the cause of action. 707 F.3d at 587. Consequently, the plaintiff's complaint could only "be understood as asserting a state-law claim for interference with easement."

5

*Id.* at 589.  Here, Plaintiffs also do not allege a violation of the NGA nor does the NGA provide them with a relevant cause of action.  (Doc. # 1-1 at 7-10).  "If Congress had intended for private actors such as [Plaintiffs] to have broad enforcement powers under the [NGA], Congress could have easily given private actors such powers." *Columbia Gas*, 707 F.3d at 588.

The similarities between this case and *Columbia Gas* do not end there.  The court also noted that "although it is difficult to gauge whether a federal issue is disputed from the Complaint, it is clear with the benefit of briefing there is no dispute over the interpretation of the federal law regulating natural gas carriers or pipelines."  707 F.3d at 589.  Likewise, Plaintiffs' Complaint does not shed much light on whether a federal issue is disputed.  (Doc. # 1-1 at 7-10).  However, Plaintiffs make clear in their brief that their action is premised upon a state-law negligence claim.  (Doc. # 20 at 1).  Keeping in mind that "all doubts should be resolved against removal," there is not a federal issue raised or disputed here, rather Plaintiffs' Complaint relies on state law.  *Harnden*, 496 F.3d at 581 (citations omitted).

### b. Substantial

To determine if a federal issue is substantial, the Sixth Circuit considers four factors, in turn and in the aggregate:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570.  Notably, "no single factor is dispositive and these factors must be considered collectively, along with any other facts that may be applicable in a given

case." *Id.*

Just like in *Mikulski*, the first factor "weighs against characterizing the federal interest as substantial because there is no federal agency in this dispute." *Id.* Here, there is no question present about whether an "agency has complied with a statute or regulation." *Id.* And most importantly, while "the federal government may have an interest in the uniform application of regulations that relate" to gas pipelines, "it has only a limited interest in private tort or contract litigation over the private duties involved," with those pipelines. *Id.* Consequently, the first factor weighs against a finding that the federal issue is substantial.

Similarly, the second factor weighs against finding that the duty of care issue is substantial. Like the accounting provision in *Mikulski*, Defendants' alleged negligence, whatever it may be, "does not implicate any broader or more substantial issue." *Id.* at 571. The application of federal regulations would simply help establish the standard of care in a state-law based negligence case. The alleged federal issue here "concerns whether a single pipeline company complied with or exceeded the boundaries of its FERC Certificate . . . that is necessarily specific to a single pipeline project—and whether such compliance overrides the plaintiffs' state-law tort theories." *Waldock*, 2017 WL 3224573, at *8. Further, resolving the duty of care question would "not necessarily even resolve all aspects of [this] case, and it [would] provide little if any precedent for future cases." *Mikulski*, 501 F.3d at 571. Plaintiffs would still have to prove the other elements of their claim, not simply whether Defendants did or did not adhere to the appropriate standard of care. *See id.*

The third factor asks whether resolution of the duty of care question is dispositive of—rather than merely incidental to—the case. As noted above, the resolution of the duty of care question would not resolve all the issues in this dispute. Again, like in *Mikulski*, even if the duty of care question is resolved here, "the plaintiffs must still prove the remaining elements" of their claims. 501 F.3d at 571. Even if answering the duty of care question *could potentially* conclude the action, that possibility is still insufficient. *Id.* ("Therefore, conformity with [the statute] may, but will not necessarily, conclude the action."). Moreover, "because there is no dispute about a federal question, it follows that the federal issue will not resolve the case." *Columbia Gas*, 707 F.3d at 589.

The final factor is subjective and a closer call. Will the Court's decision as to federal question jurisdiction control other cases? Well, if the Court were to find federal question jurisdiction proper in this matter, it is likely that future plaintiffs in similar cases could simply include a sentence in the complaint alleging that a federal gas pipeline regulation was violated. While such a finding would likely open the doors of federal court to more pipeline litigation, the alleged federal issue in this matter is more of a question of whether Defendants did or did not adhere to a certain standard in their alleged negligence. Therefore, "it is hard to imagine how the resolution of any federal issue in this case would control numerous other cases." *Columbia Gas*, 707 F.3d at 590.

In the alternative, the Court does not understand why the fully competent Floyd Circuit Court could not deduce and apply the appropriate standard of care; the mere need to apply federal law does not confer federal-question jurisdiction. *Mikulski*, 502 F.3d at 572; *Grable*, 545 U.S. at 318-19 ("One only needed to consider the treatment of federal violations generally in garden variety state tort law. The violation of federal statutes and

8

regulations is commonly given negligence per se effect in state tort proceedings.") (citations and internal quotations omitted).

Accordingly, the federal interest in this matter is not substantial.

### c.      Federal-State Balance

Finally, the Court must determine whether the exercise of jurisdiction would disturb any congressionally approved balance of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568.  While the "absence of a cause-of-action provision is not determinative, [it] certainly provides a starting point for this part of the analysis."  *Id.* at 573; *Grable*, 545 U.S. at 318 (noting that "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires.") (internal quotations omitted) (alteration in original).  The Court must further consider "the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation."  *Mikulski*, 501 F.3d at 573 (citations omitted).  "The question is not whether such a holding will open the federal courts to analogous cases—under the most rudimentary concept of legal precedent it certainly will.  The pressing questions are what cases would be analogous and how many would there be."  *Id.*

Foremost, Plaintiffs do not allege any violation of federal law in the Complaint, at most, they assert that Defendants were negligent in causing damage to Plaintiffs' property via their pipeline, which is regulated by federal law.  (Doc. # 1-1 at 9).  Even if Plaintiffs did allege a violation of federal law, which Defendants argue would be under the NGA, the NGA only allows for "an explicit private right of action and a broad right of action for the government."  *Columbia Gas*, 707 F.3d at 587.  The private right of action for which

9

the NGA allows—eminent-domain proceedings—is irrelevant to this matter. *See id.* While not determinative, the lack of a cause of action is indicative of congressional intent. *Mikulski*, 501 F.3d at 573.

Important here, the Court in *Grable* noted that "[f]or if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." 545 U.S. at 318. Likewise, allowing Plaintiffs' negligence action to remain in this Court would open the doors of federal courts to virtually any pipeline-related suit that alleges a violation of a federal regulation. While impossible to quantify, the number would not be insubstantial. *Columbia Gas*, 707 F.3d at 591 (noting that the increase in natural gas production, consumption, and transportation counsels against opening the federal courts to disputes over pipeline rights-of-way).

The same concern present in *Grable* cautions this Court from exercising jurisdiction: "[a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." 545 U.S. at 319; *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 712-13 (6th Cir. 2012) ("Finding a state-law negligence claim removable on the sole basis that the violation of a federal statute creates a presumption of negligence under state law would flout, or at least undermine, congressional intent . . . and would herald[] a potentially enormous shift of traditionally state cases into federal courts.") (internal quotations omitted). Indeed, litigants could simply allege violations of federal regulations to crowbar their claims into federal court.

Considering all of the factors and relevant precedent, Plaintiffs' claims do not belong in federal court and the Court lacks jurisdiction over this matter.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1)   Plaintiffs' Motion to Remand (Doc. # 20) is **GRANTED**;

(2)   Pursuant to 28 U.S.C. § 1447, this case is **REMANDED** back to Floyd Circuit Court and **STRICKEN** from the Court's active docket.

This 19th day of April, 2022.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\PikeCivil\2022\22-18 Order Dismissing Case for Lack of Jurisdiction.docx

11